### IN THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOY K. ALLEN,** | : | **Civil No. 1:12-CV-1624** |
| | : | |
| **Plaintiff,** | : | |
| | : | **(Judge Nealon)** |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **MICHAEL ASTRUE,** | : | |
| **COMMISSIONER OF** | : | |
| **SOCIAL SECURITY** | : | |
| | : | |
| **Defendant.** | : | |

## REPORT AND RECOMMENDATION

### I.    Introduction

This case presents legal and factual challenges, as we are called upon to assess an Administrative Law Judge (ALJ) analysis of a claimant who is beset by a host of mental, emotional and physical maladies.  Moreover, we are constrained to note that, in some respects, our analysis of the issues in the instant social security appeal is not advanced by the plaintiff's decision on appeal to largely focus upon an *ad hominem* attack upon the Administrative Law Judge himself, accusing the ALJ of pervasive bias.  This threshold issue, which dominates this appeal from the plaintiff's

perspective, warrants an initial, brief threshold response.  We find this *ad hominem*

approach to the litigation of Ms. Allen's claims to be factually unwarranted,[1] legally

misplaced,[2] and inappropriate.

However, while we reach this conclusion with respect to these *ad hominem*

claims presented by the plaintiff, when we focus our attention on the sole issue that

matters in this appeal–whether substantial evidence well articulated by the ALJ

supports the denial of benefits–we find in this case that the ALJ's analysis is not

sufficiently supported by the record, and, therefore, remand this matter for further

consideration of Allen's claims.

---

[1]For example, plaintiff argues that the ALJ's bias and unfair demeanor "is
evident by a plain reading of the transcript."  (Doc. 13, p. 16)  We have read the
transcript of this hearing, (Tr. 53-83), and reject this claim.  Quite the contrary, the
transcript shows an ALJ who consistently displayed a professional demeanor in
his dealings with both counsel and the claimant.

[2]In this regard we note that counsel on appeal was not the attorney who
handled the initial disability hearing before the ALJ.  That hearing counsel in our
view properly chose not to raise any claims of bias, and thus waived these claims.
Hummel v. Heckler, 736 F.2d 91, 94 (3d Cir. 1984) (stating that when claimant is
represented by counsel, failure to raise objection of ALJ's bias at the hearing
operates as a waiver of the issue); see also Grant v. Shalala, 989 F.2d 1332, 1339
(3d Cir. 1993) (holding that a district court lacks authority to conduct a trial and
make independent finding of fact concerning the alleged bias of an ALJ and
district court may only review findings on this question pursuant to the standard
set in 42 U.S.C. § 405(g)). Since these claims of bias are unwarranted on this
factual record, the choice of rearing counsel not to pursue this matter was a legally
proper choice.

## I.    Statement of Facts and of the Case

On December 11, 2008, Joy Allen applied for social security disability benefits, initially alleging an onset of disability in 2002. (Tr. 10.) Due to prior adjudications of previous claims submitted by Allen, the ALJ ultimately concluded that consideration of Allen's claims from August 2002 through September 2007 were barred by *res judicata*, and found that the "period at issue commences on September 6, 2007." (Id.) At the time of this disability application, Allen was 30 years old, had a highschool education, and had an employment history marked by brief, intermittent, and largely unsuccessful periods of employment as a semi-skilled worker. (Tr. 19.)

### A.    Medical Evidence

The medical evidence presented by Allen in support of this application revealed that the plaintiff suffered from a constellation of physical, emotional and psychological impairments, including depression and anxiety disorders, borderline personality disorder, and post traumatic stress disorder, which appeared related to physical, emotional and sexual abuse, as well as degenerative disc and joint disease of the cervical spine. (Tr. 12.) In addition, a consultative physical examination of Allen conducted at the request of the state agency by Dr. Deryck Brown on August 8, 2008, found that Allen: "has severe fibromyalgia related to her depression . . . . [and concluded that] She would find it very difficult to hold a job because of the

combination of these factors." (Tr. 496.) Thus, Dr. Brown concluded that "it is highly unlikely that she will ever be able to function in a public setting or for that matter in a private setting." (Id.) Dr. Brown's consultative examination report observed that Allen was under the care of Dr. Kari Woods, (Tr. 491), and Dr. Brown's diagnosis of fibromyalgia was confirmed by Dr. Wood's treatment records which also state that Allen was diagnosed with fibromyalgia in February 2006. (Tr. 550.)

The extensive medical record presented to the ALJ was punctuated by the opinions of two consultative examining health care providers, each of whom independently found Allen to be disabled. Thus, on May 29, 2008, Lynnette Ruch, PH.D., provided a detailed psychological assessment of Brown at the request of the state agency. (Tr. 481-491.) This assessment described a significant mental health history spanning fifteen years, marked by episodes of suicidal and homicidal thought, and an extensive history of childhood physical, emotional and sexual abuse. (Id.) At the conclusion of this examination Dr. Ruch determined that Allen suffered from a chronic and severe post traumatic stress disorder, a borderline personality disorder, COPD, asthma, thyroid issues, collapsed arches, stomach issues, fibromyalgia, and degenerative joint disorder. (Id.) Dr. Ruch found that Allen's Global Assessment of Functioning score was 40, and concluded that her "prognosis is poor. Her

4

psychological functioning is fairly limited.  She has a history of abuse." (Tr. 486.)

Dr. Ruch further specifically opined that Allen's ability to carry out instructions and

interact with others were impaired, finding that she displayed a marked level of

impairment in terms of her ability to interact with the public, respond appropriately

to work pressures in a usual work setting, and make judgments on simple work-

related decisions.  (Tr. 489.)

This was a significant medical finding since a GAF score, or a Global

Assessment Functioning scale, takes into consideration psychological, social, and

occupational functioning on a hypothetical continuum of mental health-illness and

is not supposed to include the consideration of impairment in functioning due to

physical (or environmental) limitations. *Diagnostic and Statistical Manual of Mental

Disorders, Fourth Edition, Text Revision*, 34, Washington, DC, American Psychiatric

Association, 2000.  ("DSM-IV-TR").  GAF scores "in the range of 61–70 indicate

'some mild symptoms [of depression] or some difficulty in social, occupational, or

school functioning.'  Diagnostic and Statistical Manual of Mental Disorders ('DSM

IV') 34 (American Psychiatric Assoc.2000). GAF scores in the 51–60 range indicate

moderate impairment in social or occupational functioning." Cherry v. Barnhart, 29

F. App'x 898, 900 (3d Cir.2002). DaVinci v. Astrue, 1:11-CV-1470, 2012 WL

6137324 (M.D. Pa. Sept. 21, 2012) report and recommendation adopted, Davinci v.

Astrue, 1:11-CV-1470, 2012 WL 6136846 (M.D. Pa. Dec. 11, 2012).  A GAF score

of 41–50 indicates 'serious symptoms (e.g., suicidal ideation, severe obsessional

rituals, frequent shoplifting) [or] any serious impairment in social, occupational, or

school functioning (e.g., no friends, unable to keep a job).'  DSM–IV at 34.  A score

of 50 is on the borderline between serious and moderate symptoms."  Colon v.

Barnhart, 424 F. Supp. 2d 805, 809 (E.D. Pa. 2006).

Other independent medical evidence confirmed and corroborated that Allen

suffered from longstanding serious-to-moderate mental health impairments.  Thus,

treatment records of Northern Tier Counseling, which had seen and treated Allen

from 2004 through 2009 documented a past history of suicidal thought and self-

mutilation, coupled with GAF scores ranging between 50 and 55, scores that were

emblematic of prolonged severe-to-moderate psychiatric impairment.  (Tr. 556-575.)

In addition, the consultative physical examination of Allen conducted at the

request of the state agency by Dr. Deryck Brown on August 8, 2008 also found that

Allen was disabled.  This examination identified a cascading array of physical, mental

and emotional ailments experienced by Allen, including thyroid disease,

fibromyalgia, depression, anxiety, joint disorders, PTSD, and personality disorders.

(Tr. 491.)  In particular, Dr. Brown found that Allen:  "has severe fibromyalgia

related to her depression . . . . [and concluded that] She would find it very difficult to

hold a job because of the combination of these factors." (Tr. 496.)  On the basis of these findings, Dr. Brown opined that "it is highly unlikely that she will ever be able to function in a public setting or for that matter in a private setting."  (Id.)  Dr. Brown's consultative examination report observed that Allen was under the care of Dr. Kari Woods, (Tr. 491), and Dr. Brown's diagnosis of fibromyalgia was also confirmed by Dr. Wood's treatment records which reflect that Allen was diagnosed with fibromyalgia in February 2006.  (Tr. 550.)

In contrast, to these two consulting examination reports, both of which were based upon an actual examination of Allen and both of which concluded that Allen was disabled, two state agency physicians conducted a review of Allen's medical records, and opined that Allen retained some limited capacity for work.  (Tr. 586-609.) These document review forms were notable for their brevity, consisting largely of checkmarks on a state agency form, accompanied by modest factual narratives. (Id.)  However, these evaluations also concluded that Allen suffered from medically determinable ailments, including fibromyalgia. (Tr. 591.) Further, these assessments documented Allen's history of suicidal thought and self-mutilation.  (Tr. 609.)

## B.   ALJ Hearing and Decision

It is against the backdrop of this medical and emotional history that the ALJ conducted a hearing on Allen's disability claim on October 4, 2010.  (Tr. 53-83.0)

At this hearing the ALJ heard from Allen and also took testimony from an vocational expert.  (Id.)  Notably, the ALJ's hypothetical questions to the vocational expert, while comprehensive in their treatment of Allen's physical ailments, did not fully assess the degree to which Allen's emotional impairments would restrict her employment prospects, something which had been a material element in the disability findings of Dr. Ruch and Dr. Brown.  (Tr. 77-82.)

Following this hearing, the ALJ issued an opinion on November 17, 2010, which denied Allen's application for benefits.  (Tr. 10-20.)  This decision was incomplete and enigmatic at several steps of the disability analysis process.  For example, at Step 2 of the disability analysis process, the ALJ found that Allen suffered from a series of severe impairments, (Tr. 12.), but concluded without further explanation that "claimant also complained of knee pain and fibromyalgia, however, these conditions do not impose more than minimal limitations on her ability to work." (Tr. 12.)  The ALJ reached this conclusion despite the fact that Dr. Kari Woods, Allen's treating physician had diagnosed Allen with fibromyalgia in February 2006. (Tr. 550.)  This Step 2 analysis was also entirely at odds with the findings of the consultative physical examination of Allen conducted at the request of the state agency by Dr. Deryck Brown on August 8, 2008, which that Allen:  "has *severe fibromyalgia* related to her depression . . . . [and concluded that]  She would find it

8

very difficult to hold a job because of the combination of these factors." (Tr. 496)(emphasis added). Further, this Step 2 determination was inconsistent with the findings of a medical records review conducted by the state agency which found that Allen suffered from medically determinable ailments, including fibromyalgia. (Tr. 591.) None of these medical findings, which contradicted the ALJ's Step 2 determination, were mentioned or addressed by the ALJ in any fashion in this stage of his disability analysis.

At Step 3 of this analysis the ALJ then concluded that Allen did not suffer from any conditions, singly or in combination, which met the listed criteria set forth in social security regulations, noting that with respect to Allen's psychiatric conditions, she would meet these listed criteria if she experienced marked impairment in any two listed categories, including social functioning, activities of daily living, concentration persistence or pace, or if she experienced repeated episodes of decompensation. (Tr. 13.) The ALJ then concluded that Allen did not meet these criteria, despite the fact that the state consultative psychologist, Dr. Ruch, specifically opined that Allen's ability to carry out instructions and interact with others were impaired, finding that she displayed a marked level of impairment in terms of her ability to interact with the public, respond appropriately to work pressures in a usual work setting, and make judgments on simple work-related decisions. (Tr. 489.) Indeed, the ALJ's

conclusions at Step 3 of this sequential analysis made no reference whatsoever to these seemingly contrary clinical findings.  (Tr. 13-14)

Finally, at Step 5 of this sequential disability analysis process, the ALJ endeavored to address the cumulative medical opinion evidence supporting Allen's claim, the opinions of the only health care professionals who ever examined and assessed Allen's disability, Drs. Ruch and Brown.  However, the ALJ's Step 5 analysis of this medical evidence is in some respects both confused and confusing. For example, the ALJ's opinion reflects a persistent confusion regarding Dr. Brown's status, first correctly describing him as a consultative examining physician (Tr. 16.), then later characterizing him as a treating physician, and rejecting his opinion because it was inconsistent with Dr. Brown's treatment records for Allen, records that did not exist since he was not Allen's treating physician.  (Tr. 18.)

At Step 5, the ALJ also discounted Dr. Ruch's opinion albeit in a confused manner, stating that a "longitudinal review of the entire record" did not demonstrate "consistent sign of neurological, musculoskeletal and motor functioning deficits.' (Tr. 18.)  The difficulty with this aspect of the ALJ's analysis was twofold:  First, Dr. Ruch's opinion was that Allen was disabled was not based on neurological, musculoskeletal and motor functioning.  It was premised on profound, persistent emotional problems which had manifested themselves over time through suicidal and

homicidal thoughts as well as acts of self-mutilation.  Further the ALJ's opinion in this regard was internally inconsistent since the ALJ asserted that a "longitudinal review of the entire record" did not support a finding of serious mental illness, while also acknowledging that over the span of five years "claimant's GAF score have ranged from 40-55", (Tr. 18.), assessments which represent findings of persistent and profound mental illness.

Allen administratively challenged this adverse ALJ decision, but the Appeals Council affirmed the judgment of the ALJ denying this disability benefit application. This appeal followed.  (Doc. 1)

The parties have now fully briefed this matter, (Docs. 13 and 14), and this case is ripe for resolution.  For the reasons set forth below, we find that the ALJ's findings in this case were not adequately explained on the record.   Therefore, it is recommended that this appeal be remanded for further consideration of this evidence.

## II.   Discussion

### A.   Standards of Review–The Roles of the Administrative Law Judge and This Court

#### 1.   The Role of the ALJ

Resolution of the instant social security appeal involves an informed consideration of the respective roles of two adjudicators–the administrative law judge

(ALJ) and this Court. At the outset, it is the responsibility of the ALJ in the first instance to determine whether a claimant has met the statutory prerequisites for entitlement to benefits. To receive disability benefits, a claimant must present evidence which demonstrates that the claimant has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A). Furthermore,

> [a]n individual shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [she] lives, or whether a specific job vacancy exists for [her], or whether [she] would be hired if [she] applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

In making this determination the ALJ employs a five-step evaluation process to determine if a person is eligible for disability benefits. See 20 C.F.R. § 404.1520. See also Plummer v. Apfel, 186 F.3d 422, 428 (3d Cir. 1999). If the ALJ finds that

a plaintiff is disabled or not disabled at any point in the sequence, review does not proceed any further.  See 20 C.F.R. § 404.1520.   As part of this analysis the ALJ must sequentially determine, first, whether the claimant is engaged in substantial gainful activity.  If a claimant is not engaged in gainful activity, the ALJ must then determine at step two whether the claimant has a severe impairment.  If a claimant fails to show that his impairments are "severe," he is ineligible for disability benefits. See Plummer v. Apfel, 186 F.3d 422, 428 (3d Cir. 1999).  The Regulations provide that a "severe" impairment is an "impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities."  20 C.F.R. §404.1520.

With respect to this threshold showing of a severe impairment, the showing required by law has been aptly described in the following terms:  "In order to meet the step two severity test, an impairment need only cause a slight  abnormality that has no more than a minimal effect on the ability to do basic work activities.  20 C.F.R. §§ 404.1521 416.921; S.S.R. 96-3p, 85-28. The Third Circuit Court of Appeals has held that the step two severity inquiry is a *'de minimus* screening device to dispose of groundless claims.'  McCrea v. Comm. of Soc. Sec., 370 F.3d 357, 360 (3d Cir.2004); Newell v. Comm. of Soc. Sec., 347 F.3d 541, 546 (3d Cir.2003). 'Any doubt as to whether this showing has been made is to be resolved in favor of the

applicant.' Id." Velazquez v. Astrue, No. 07-5343, 2008 WL 4589831, *3 (E.D. Pa., Oct. 15, 2008). Thus, "[t]he claimant's burden at step two is 'not an exacting one.' McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir.2004). This step should be 'rarely utilized' to deny benefits. Id. at 361. Rather,. . . [a]n individual should be denied benefits at step two only if the impairment he presents is a 'slight abnormality' that has 'no more than a minimal effect on [his] ability to work.' Id. "Kinney v. Comm'r of Soc. Sec., 244 F. App'x 467, 469-70 (3d Cir. 2007). Accordingly, "[d]ue to this limited function, the Commissioner's determination to deny an applicant's request for benefits at step two should be reviewed with close scrutiny." McCrea v. Commissioner of Social Sec., 370 F.3d 357, 360 (3d Cir. 2004).

Once this threshold, *de minimus* showing is made, "[i]n step three, the ALJ must determine whether [a claimant's] impairment matches, or is equivalent to, one of the listed impairments. See Plummer, 186 F.3d at 428. If the impairment is equivalent to a listed impairment, then [the claimant] is *per se* disabled and no further analysis is necessary. See id" Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 119 (3d Cir. 2000). For emotional and mental impairments, these listing criteria include "at least two of the following:  1. Marked restriction of activities of daily living; or  2. Marked difficulties in maintaining social functioning; or  3. Marked difficulties in maintaining concentration, persistence, or pace; or  4. Repeated

episodes of decompensation, each of extended duration." 20 C.F.R. § 404, app. 1. In order to pass muster, this Step 3 analysis must also be accompanied by a discussion of the evidence which is sufficient to permit informed judicial review of the ALJ determination. Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 120 (3d Cir. 2000).

Finally at Steps 4 and 5, the ALJ must consider whether the claimant's impairment prevents the claimant from doing past relevant work; and whether the claimant's impairment prevents the claimant from doing any other work. See 20 C.F.R. § 404.1520. This disability determination involves shifting burdens of proof. The initial burden rests with the claimant to demonstrate that he is unable to engage in past relevant work. If the claimant satisfies this burden, then the Commissioner must show that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). If the ALJ finds that a plaintiff is disabled or not disabled at any point in the sequence, review does not proceed any further. See 20 C.F.R. § 404.1520.

In addition to this general analytical framework: "The Commissioner has supplemented this sequential process for evaluating a claimant's eligibility for benefits with additional regulations dealing specifically with mental impairments. 20

C.F.R. § 404.1520a.  These procedures require the hearing officer (and ALJ) to record the pertinent signs, symptoms, findings, functional limitations and effects of treatment contained in the case record, in order to determine if a mental impairment exists.  20 C.F.R. § 404.1520a(b)(1).  If an impairment is found, the examiner must analyze whether certain medical findings relevant to a claimant's ability to work are present or absent. § 404.1520a(b)(2).  The examiner must then rate the degree of functional loss resulting from the impairment in certain areas deemed essential for work.  If the mental impairment is considered 'severe', the examiner must then determine if it meets a listed mental disorder.  § 404.1520a(c)(2).  If the impairment is severe, but does not reach the level of a listed disorder, then the examiner must conduct a residual functional capacity assessment. § 404.1520a(c)(3)." Plummer v. Apfel, 186 F.3d 422, 428-29 (3d Cir. 1999).  As part of this evaluative process, "the Commissioner's own regulations require the Commissioner to 'conduct a particularized assessment of an individual's ability in evaluating claims of stress and mental illness.' See Walls v. Barnhart, 2002 WL 485641, at *19 (E.D.Pa. Mar.28, 2002)." Corona v. Barnhart, 431 F. Supp. 2d 506, 515 (E.D. Pa. 2006).

The ALJ's disability determination must also meet certain basic procedural and substantive requisites.  Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this

disability determination.  Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests."  Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981).  Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence.  Id. at 706-707.  In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding."  Schaudeck v. Com. of Soc. Sec., 181 F. 3d 429, 433 (3d Cir. 1999).

## 2.   Legal Benchmarks for Assessing Medical Opinions

The principle that the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests," Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981), applies with particular force to the assessment of medical opinion evidence, evidence which should be accorded great weight by the ALJ.  In this regard, the legal standards governing our evaluation of this type of evidence are familiar ones.  When assessing competing views of various  physicians, the ALJ and this Court are cautioned, "examining physician opinions often deserve more weight than the opinions of doctors who review records, see, e.g., 20 C.F.R. § 404.1527(d)(1)-(2)."  Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011).  Indeed, social security regulations advise ALJs that:  "Generally, we give more weight to the

opinion of a source who has examined [a claimant] than to the opinion of a source who has not examined [the claimant].". 20 C.F.R. § 404.1527(c)(1).

Given this recognition of the great weight that should attach to the professional judgment of examining physicians, it is axiomatic that an ALJ must provide an adequate explanation for any decision which chooses to disregard a treating physician's findings regarding illness, impairment and disability.  Moreover, when an ALJ fails to adequately explain why a treating or examining physician's medical assessment has been discounted, a remand for further development of the factual record is proper.  See e.g., Burnett v. Commissioner of Social Security, 220 F.3d 112, 119 (3d Cir. 2000)(failure to adequately discuss compering medical evidence compels remand of ALJ decision); Shaudeck v. Commissioner of Social Security, 181 F.3d 429 (3d Cir. 1999); Allen v. Brown, 881 F.2d 37, 40-41 (3d Cir. 1989); Belotserkovskaya v. Barnhart, 342 F.Supp.2d 335 (E.D. Pa. 2004).  Thus, as one court has aptly observed:

> "An ALJ may not reject a physician's findings unless he first weighs them against other relevant evidence and explains why certain evidence has been accepted and why other evidence has been rejected."  Mason v. Shalala, 994 F.2d 1058, 1067 (3d Cir.1993)(internal quotation marks, citations and indication of alteration omitted).  Where the findings are those of a treating physician, the Third Circuit has "long accepted" the proposition that those findings "must [be] give[n] greater weight ... than ... the findings of a physician who has examined the claimant only once or not at all."  Id. (citations omitted)  An ALJ may reject a treating

18

physician's opinion on the basis of contradictory medical evidence, see Frankenfield v. Bowen, 861 F.2d 405, 408 (3d Cir.1988), and may afford a medical opinion more or less weight depending upon the extent to which supporting explanations are provided, see Mason, 994 F.2d at 1065 ("[f]orm reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best"), and whether the reporting doctor is a specialist, see Id. at 1067.   An ALJ may not, however, reject medical determinations by substituting his own medical judgments.   See Frankenfield, 861 F.2d at 408.

Terwilliger v. Chater, 945 F.Supp. 836, 842-3 (E.D.Pa.1996).

### 3.   Other Procedural and Substantive Requisites for an ALJ Ruling–Proper Hypothetical Questions for Vocational Experts

Furthermore, since one of the principal contested issues in this setting relates to the claimant's residual capacity for work in the national economy, an ALJ must exercise care when formulating proper hypothetical questions to vocational experts who opine on the availability of work for a particular claimant.   In this regard, the controlling legal standards are clear, and clearly defined.   As the United States Court of Appeals for the Third Circuit has observed:

> Discussing hypothetical questions posed to vocational experts, we have said that "[w]hile the ALJ may proffer a variety of assumptions to the expert, the vocational expert's testimony concerning a claimant's ability to perform alternative employment may only be considered for purposes of determining disability if the question accurately portrays the claimant's individual physical and mental impairments." Podedworny, 745 F.2d at 218.   A hypothetical question posed to a vocational expert "must reflect all of a claimant's impairments." Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir.1987) (emphasis added).   Where there

exists in the record medically undisputed evidence of specific impairments not included in a hypothetical question to a vocational expert, the expert's response is not considered substantial evidence. <u>Podedworny</u>, 745 F.2d at 218 (citing <u>Wallace v. Secretary of Health & Human Servs.</u>, 722 F.2d 1150, 1155 (3d Cir.1983)).

<u>Burns v. Barnhart</u>, 312 F.3d 113, 123 (3d Cir. 2002).

The formulation of a proper hypothetical question has a dual significance in social security proceedings.  First, as an evidentiary matter, it determines whether the vocational expert's opinion can be considered as substantial evidence supporting an ALJ finding.  <u>Burns v. Barnhart</u>, 312 F.3d 113, 123 (3d Cir. 2002)("Where there exists in the record medically undisputed evidence of specific impairments not included in a hypothetical question to a vocational expert, the expert's response is not considered substantial evidence.")  However, more fundamentally, an erroneous or inadequate hypothetical question undermines the reliability of any residual function capacity determination since " objections to the adequacy of hypothetical questions posed to a vocational expert often boil down to attacks on the RFC assessment itself." <u>Rutherford v. Barnhart</u>, 399 F.3d 546, 554 n. 8 (3d Cir. 2005).

## 4.    <u>Judicial Review of ALJ Determinations–Standard of Review</u>

Once the ALJ has made a disability determination, it is then the responsibility of this Court to independently review that finding.  In undertaking this task, this

Court applies a specific, well-settled and carefully articulated standard of review. In an action under 42 U.S.C. § 405(g) to review the decision of the Commissioner of Social Security denying plaintiff's claim for disability benefits, Congress has specifically provided that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]" 42 U.S.C. § 405(g).

The "substantial evidence" standard of review prescribed by statute is a deferential standard of review. Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004). When reviewing the denial of disability benefits, we must simply determine whether the denial is supported by substantial evidence. Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988); see also Johnson v. Commissioner of Social Sec., 529 F.3d 198, 200 (3d Cir. 2008). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999)." Johnson, 529 F.3d at 200. See also Pierce v. Underwood, 487 U.S. 552 (1988). It is less than a preponderance of the evidence but more than a mere scintilla of proof. Richardson v. Perales, 402 U.S. 389, 401 (1971). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999)(quoting

Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995).

A single piece of evidence is not substantial evidence if the ALJ ignores

countervailing evidence or fails to resolve a conflict created by the evidence. Mason

v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). However, in an adequately developed

factual record, substantial evidence may be "something less than the weight of the

evidence, and the possibility of drawing two inconsistent conclusions from the

evidence does not prevent [the decision] from being supported by substantial

evidence." Consolo v. Federal Maritime Comm'n, 383 U.S. 607, 620 (1966).

Moreover, in conducting this review we are cautioned that "an ALJ's findings based

on the credibility of the applicant are to be accorded great weight and deference,

particularly since an ALJ is charged with the duty of observing a witness's demeanor

and credibility.' Walters v. Commissioner of Social Sec., 127 F.3d 525, 531 (6th

Cir.1997); see also Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 801

(10th Cir.1991) ('We defer to the ALJ as trier of fact, the individual optimally

positioned to observe and assess witness credibility.')." Frazier v. Apfel, No. 99-715,

2000 WL 288246, *9 (E.D. Pa. March 7, 2000). Furthermore, in determining if the

ALJ's decision is supported by substantial evidence the court may not parse the record

but rather must scrutinize the record as a whole.  <u>Smith v. Califano</u>, 637 F.2d 968,

970 (3d Cir. 1981).

### B.    The ALJ's Decision in This Case Did Not Adequately Address the Medical Evidence

Judged against these legal guideposts, while we reject the plaintiff's *ad hominem* attack upon the ALJ, we find in this case that the ALJ's treatment of the evidence developed in this matter was flawed in at least six ways, flaws which compel a remand of this case for further proceedings.

First, we find that the ALJ erred when he discounted Allen's fibromyalgia as a severe ailment at Step 2 of this analytic process without discussing or acknowledging the substantial body of contrary medical evidence which showed that this condition was medically determinable, and in the opinion of the consulting examining doctor so severe that it was disabling when considered in conjunction with Allen's psychological impairments.  Since it is impossible to determine how this Step 2 error may have colored the ALJ's judgment at subsequent steps in this process remand is appropriate here to clarify this threshold question

Second, we believe that remand is also appropriate to allow the ALJ to more fully explain the Step 3 analysis in this case, a Step 3 analysis which concluded that Allen's condition did not meet a listed mental health impairment without ever

discussing or even acknowledging the consulting examining opinion which seemed on its face to suggest that Allen's condition may be sufficiently severe to meet this listing.

Third, we believe that a remand is necessary to allow clarification of the ALJ's treatment at Step 5 of the consulting examining opinion of Dr. Brown, and to eliminate the current confusion in the ALJ opinion, which misstates the nature of Dr. Brown's assessment, erroneously describing it at one point in the ALJ decision as a treating physician opinion.

Fourth, we find that the ALJ's rationale for rejecting Dr. Ruch's psychological evaluation is also inadequate.  As we have noted, the ALJ rejected this assessment, stating that a "longitudinal review of the entire record" did not demonstrate "consistent sign of neurological, musculoskeletal and motor functioning deficits.' (Tr. 18.)  This proffered rationale in flawed in two fundamental ways:  First, Dr. Ruch's opinion was that Allen was disabled not based on neurological, musculoskeletal and motor functioning.  It was premised on profound, persistent emotional problems which had manifested themselves over time through suicidal and homicidal thoughts as well as acts of self-mutilation.  Further the ALJ's opinion in this regard was internally inconsistent since the ALJ asserted that a "longitudinal review of the entire record" did not support a finding of serious mental illness, while

also acknowledging that over the span of five years "claimant's GAF score have ranged from 40-55", (Tr. 18.), assessments which represent findings of persistent and profound mental illness.

Fifth, we believe that the ALJ's decision, which favored record reviews over examining physician opinions, failed to adequately take into account the guiding principle that "examining physician opinions often deserve more weight than the opinions of doctors who review records, see, e.g., 20 C.F.R. § 404.1527(d)(1)-(2)." Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011), and neglected without adequate explanation to abide by the rule that:  "Generally, we give more weight to the opinion of a source who has examined [a claimant] than to the opinion of a source who has not examined [the claimant]." 20 C.F.R. § 404.1527(c)(1).  This is particularly true in a case such as this, when that records review opinions are largely expressed in form reports in which a physician's obligation is only to check a box or fill in a blank, since such forms are often considered "weak evidence at best."  See Mason, 994 F.2d at 1065.

Finally, we believe that a remand is appropriate in order to ensure that any hypothetical questions posed to the vocational expert fully account for both Allen's physical and her psychological limitations.

Given the flaws inherent in the ALJ's treatment of this medical evidence, we further find that this evidence is insufficient to allow us to conclude that "substantial evidence" supports the ALJ's decision to reject these examining medical opinions. In sum, in this case, we find that the ALJ's analysis failed to adequately address the treating physician medical evidence.  Because the ALJ's decision is not adequately explained or supported in the record before us, we recommend that the case be remanded in order for the ALJ to re-assess this evidence.  Yet, while case law calls for a remand and further proceedings by the ALJ in this case assessing this claim under the five-step sequential analysis applicable to such claims, nothing in this report and recommendation should be construed as suggesting what the outcome of that final and full analysis should be.  Rather, that ultimate assessment remains the province of the ALJ.[3]

---

[3]Indeed, we note that, beyond the matters cited in this Report and Recommendation, the ALJ's decision may have also failed to expressly consider and address evidence on the record which could have supported a determination that Allen was not disabled.  (Tr. 431.)  Because the ALJ did not address this evidence, we will not independently assess its probative value, but rather recommend that this task be left to the ALJ on remand.

## III.   Recommendation

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the plaintiff's complaint be REMANDED for further consideration of the medical evidence.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 26th day of February, 2014.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge